UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

KENNETH SACKS,                          ) CV 07-06580- SH
                                        )
              Plaintiff,                ) MEMORANDUM DECISION
                                        )
       v.                               )
                                        )
MICHAEL J. ASTRUE, Commissioner         )
Social Security Administration,         )
                                        )
              Defendant,                )
_____)

## I.  PROCEEDINGS

Plaintiff filed a Complaint on October 16, 2007, appealing a final administrative decision denying Disability Insurance Benefits ("DIB") and Supplemental Security Income (SSI) benefits.  Defendant filed an Answer on February 20, 2008.  Both parties consented to proceed before the undersigned United States Magistrate Judge on February 28, 2008.  The matter has been taken under submission.

1

## II.  BACKGROUND

Plaintiff applied for SSI benefits on December 9, 2002, asserting a disability onset date of July 22, 2002 due to diabetes and depression.  (A.R. 77-8, 87).  On December 13, 2002, Plaintiff filed an application for DIB, alleging inability to perform his past relevant work.  (A.R. 63, 77-8).  The Social Security Administration (SSA) denied the claims initially and on reconsideration.  Plaintiff filed a request for hearing before an Administrative Law Judge (ALJ) on September 15, 2003. (A.R. 42).

Following the hearing on August 11, 2004, the ALJ concluded that Plaintiff was able to perform past relevant work, and denied benefits.  (A.R. 39, 48).  Plaintiff filed a request for review of the ALJ Decision from the Appeals Council on February 3, 2005, and was granted a review under the substantial evidence and new and material evidence provisions of the Social Security Administration regulations.  (A.R. 53, 55).

On November 4, 2005, the Appeals Council vacated the hearing Decision and remanded the case for further proceedings, ordering the ALJ to: (1) give further consideration to claimant's residual functional capacity (RFC) and provide rationale with specific references to evidence; (2) obtain additional evidence concerning claimant's alleged impairments in order to complete the administrative record; (3) further evaluate the claimant's mental impairment; and (3) further evaluate the claimant's subjective complaints and provide the rationale for evaluation of symptoms.  (A.R. 53-4).

A new hearing was held before a second ALJ on November 7, 2006. (A.R. 2006).  Following the orders of the Appeals Council, the ALJ concluded that Plaintiff was not and had not been disabled during the period alleged through the date of the Decision.  (A.R. 19, 27).  The ALJ determined that Plaintiff had impairments from chronic adjustment disorder and obesity, but that Plaintiff did not have an impairment or combination of impairments that meets or

medically equals one of the "listed impairments". Furthermore, the ALJ found that: (1) Plaintiff's subjective statements regarding symptoms were not credible to the extent that they constitute an allegation that the Plaintiff is precluded from engaging in all substantial gainful activity for a period of 12 continuous months or more; (2) Plaintiff retains a residual functional capacity to perform light work activity; and (3) taking into account Plaintiff's education, age, employment experience, and capacity for light work, Plaintiff is able to perform past work as a security guard. (A.R. 26-7).

Plaintiff requested review of the second ALJ Decision from the Appeals Council on February 2, 2007, which was denied on August 11, 2007. (A.R. 6, 13). This action followed.


III.   CONTENTIONS OF THE PARTIES

Plaintiff contends that: (1) the ALJ improperly rejected the opinions of treating physicians; (2) the ALJ erred by failing to find that diabetes with neuropathy was a severe impairment at step two of the sequential evaluation; (3) the ALJ failed to consider Plaintiff's obesity in determining the Plaintiff's residual functional capacity (RFC); and (4) the ALJ improperly evaluated the Plaintiff's testimony.

Defendant asserts that the ALJ properly weighed the medical opinions of the treating physicians and provided specific, legitimate reasons for not relying on them. Also, Defendant contends that the evidence does not support a claim of neuropathy and, even if Plaintiff did suffer neuropathy, the record does not show that he was severely limited from doing basic work activities. Defendant additionally asserts that the ALJ properly considered the impact Plaintiff's obesity had on his ability to do work related activities. Finally, Defendant maintains that the ALJ properly assessed Plaintiff's testimony and provided clear and convincing reasons for finding Plaintiff's allegations about the severity of

his symptoms to be less than fully credible.

## IV.  DISCUSSION

Under 42 U.S.C. §405(g), this court reviews the ALJ's decision to determine if: (1) the ALJ's findings are supported by substantial evidence; and (2) the ALJ used proper legal standards.  DeLorme v. Sullivan, 924 F.2d 841 (8th Cir. 1991).  Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401 (1971), but less than a preponderance." Desrosiers v. Secretary of Health & Human Servs.,  846 F.2d 573, 576 (9th Cir. 1988).  This court cannot disturb the ALJ's findings if those findings are supported by substantial evidence, even though other evidence may exist which supports Plaintiff's claim.  See Torske v. Richardson, 484 F.2d 59, 60 (9th Cir. 1973), cert. denied, Torske v. Weinberger, 417 U.S. 933 (1974); Harvey v. Richardson, 451 F.2d 589, 590 (9th Cir. 1971).

It is the duty of this court to review the record as a whole and to consider adverse as well as supporting evidence.  Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986).  The court is required to uphold the decision of the ALJ where evidence is susceptible to more than one rational interpretation.  Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984).  The court has the authority to affirm, modify, or reverse the ALJ's decision "with or without remanding the cause for rehearing."  42 U.S.C. §405(g).  Remand is appropriate where additional proceedings would remedy defects in the ALJ's decision.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).

The ALJ follows a five-step sequential evaluation for determining whether a person is disabled.  First, it is determined whether the person is engaged in "substantial gainful activity."  If so, disability benefits are denied.  Second, if the person is not so engaged, it is determined whether the person has a medically severe impairment or combination of impairments.  If the person does not have a

4

severe impairment or combination of impairments, benefits are denied.  Third, if the person has a severe impairment, it is determined whether the impairment meets or equals one of a number of "listed impairments."  If the impairment meets or equals a "listed impairment," the person is conclusively presumed to be disabled.  Fourth, if the impairment does not meet or equal the "listed impairments," it is determined whether the impairment prevents the person from performing past relevant work.  If the person can perform past relevant work, benefits are denied.  Fifth, if the person cannot perform past relevant work, the burden shifts to the ALJ to show that the person is able to perform other kinds of work.  The person is entitled to disability benefits only if he is unable to perform other work.  20 C.F.R. §416.920; 20 C.F.R. §404.1520 (1994); Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

**A. The ALJ properly considered the opinions of the treating physicians.**

The Plaintiff contends that the ALJ improperly rejected the medical opinions of Plaintiff's treating doctors and therapists at the Veteran's Administration (VA) Medical Center.   In particular, Plaintiff argues that the ALJ did not give specific, legitimate reasons for rejecting the opinions of Dr. Harrison and Dr. Suzuki, contained in separate impairment assessment questionnaires, and did not reference the other consultations on record that supported their opinions. (A.R. 498-503, 505-12).

Dr. Harrison, who treated Plaintiff from March 2003 to August 2005, filled out a psychiatric impairment assessment on September 1, 2005, in which she concluded that Plaintiff suffered from depression and had a Global Assessment of Functioning (GAF) of 45, with the highest GAF score in the prior year being 60.  (A.R. 504-5).  She noted that Plaintiff experienced various mood related symptoms and had marked limitation in his ability to travel, carry out instructions, perform within a schedule, respond appropriately to changes in

1   work setting, and could not set realistic goals or make independent decisions.
2   (A.R. 505-10).

3       Similarly, Dr. Suzuki, who began treating Plaintiff in 2001, completed a
4   diabetes impairment questionnaire on April 25, 2005.  She noted that Plaintiff
5   experienced headaches, fatigue, general malaise, difficulty thinking or
6   concentrating, and had psychological problems.  (A.R. 497-499).  She stated that
7   Plaintiff was only capable of sitting, standing, and walking two hours during an
8   eight-hour work-day.  Additionally, she stated that he could only lift up to ten
9   pounds occasionally and was unable to carry anything over five pounds.  (A.R.
10  501).

11      A treating physician's opinion is entitled to greater weight than that of an
12  examining physician.  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989),
13  citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987).  A treating
14  physician's opinion is given deference because he is employed to cure the
15  claimant and has a greater chance to know and observe the claimant as an
16  individual.  Sprague, 812 F.2d at 1230.  "The treating physician's opinion is not,
17  however, necessarily conclusive as to either a physical condition or the ultimate
18  issue of disability."  Magallanes, 881 F.2d at 751, citing Rodriguez v. Bowen,
19  876 F.2d 759. 761-2 n.7 (9th Cir. 1989).  The weight given a treating physician's
20  opinion depends on whether it is supported by sufficient medical data and is
21  consistent with other evidence in the records.  20 C.F.R. §§404.1527, 416.927
22  (1994).  "The [Commissioner] may disregard the physician's opinions whether
23  or not that opinion is contradicted."  Magallanes, 881 F.2d at 751, citing Cotton v.
24  Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986).

25      In his decision, the ALJ noted that various medical opinions were
26  inconsistent regarding Plaintiff's severity of depression.  (A.R. 21-2).  For
27  instance, Dr. Makahani completed a psychiatric consultative examination on July
28  6, 2006 and found that Plaintiff was suffering from chronic adjustment disorder,

6

but that he was capable of daily living activities and could handle the stresses and demands of employment.  (A.R. 513-7).  A physical consultative exam conducted on July 15, 2003 found that Plaintiff could stand and walk with normal breaks for about six hours during a normal work day, and that he could frequently lift and carry 25lbs.  (A.R. 293).  Additionally, Dr. Warren, a resident at the VA Medical Center, reported that Plaintiff's symptoms were inconsistent with his daily activities and that Plaintiff lacked those symptoms normally associated with severe depression (A.R. 269-70).  Dr. Warren noted that he "discussed at length [Plaintiff] being able to work and addressed [Plaintiff's] resistance to considering that he is actually able to work."  (A.R. 270).

The ALJ gave specific, legitimate reasons for not relying on the medical opinions of Dr. Harrison and Dr. Suzuki.  The ALJ found that Dr. Harrison's opinion simply restated Plaintiff's subjective allegations and was not supported by any objective examination findings or medical reports.  (A.R. 22). Additionally, the evidence contradicts Dr. Harrison's opinion and indicates that Plaintiff was able to manage his own financial affairs, shop regularly, keep up his own grooming and household chores, walk daily, and be socially active with friends and family.  (A.R.  100-2, 424, 542, 550, 722).

In regards to Dr. Suzuki's opinion of Plaintiff's physical limitations, the ALJ found that her conclusions were unsupported by any objective findings and was inconsistent with the record as whole.  The medical evidence does not show Plaintiff was severely impaired due to his diabetes.  Instead, the evidence indicates that Plaintiff was able to maintain daily activities and that he felt better with proper management of his diabetes.  (A.R. 100-2, 542, 549, 551).  The ALJ also points out Dr. Suzuki stated in her own treatment notes dated April 25, 2005, that she doubted Plaintiff would qualify for benefits.  (A.R. 431).

Plaintiff argues that the ALJ did not take into consideration supporting evidence for the opinions expressed by Dr. Harrison and Dr. Suzuki in the

questionnaires, namely the psychiatric evaluations conducted by Dr. Syed, Dr. Ganzell, Dr. Cummings, and conclusions noted by Dr. Warren and Dr. Harrison in treatment records. On April 2, 2002 Dr. Syed diagnosed Plaintiff with adjustment disorder and assigned a GAF of 55. (A.R. 188). Dr. Ganzell meet with Plaintiff on March, 28, 2003, observed that Plaintiff exhibited dysthymic mood, and diagnosed depression with a GAF score of 45. (A.R. 412-6). Dr. Cummings examined Plaintiff on July 11, 2005 and diagnosed Plaintiff with chronic adjustment disorder with a GAF score of 60. (A.R. 445-6). Dr. Warren conducted a psychiatry intake on March 28, 2003 and noted that the Plaintiff showed signs of helplessness/worthlessness, amotivation/anxiety, and dysphoric affect. (A.R. 249-50). Dr. Harrison evaluated Plaintiff on March 31, 2005, and observed a depressed mood, poor attention and concentration, and stated the Plaintiff had depression. (A.R. 412-6)

The ALJ is not required to discuss every document in the record. In this case, the ALJ discussed the various medical opinions to the extent that they were relevant. In his Decision, the ALJ referenced Dr. Ganzell's assessment on March 28, 2003 and Dr. Cumming's assessment on July 11, 2005. (A.R. 20-1). Additionally, the ALJ discussed Dr. Warren's remarks and diagnosis, noting that Dr. Warren observed the signs and symptoms of adjustment disorder and depression. (A.R. 21, 249). However, Dr. Warren reported on June 16, 2009 that Plaintiff's reported symptoms were inconsistent with his reported daily activities and what was actually observable. (A.R. 269). Dr. Warren also stated that Plaintiff asked about filing for benefits because of depression, but that he felt Plaintiff's symptoms would not make him eligible at that time. (A.R. 270). The ALJ considered the various GAF scores assigned by Dr. Ganzell and Dr. Cummings, but due to the subjective nature of GAF scores, elected to give greater weight to Dr. Warren's assessment.

The ALJ properly weighed the various opinions of Plaintiff's treating

8

1    physicians from the VA Medical Center, including the questionnaires completed

2    by Dr. Harrison and Dr. Suzuki, and gave specific, legitimate reasons for not

3    relying on them.

4

5    **B. The ALJ erred in determining that there was no finding of**

6    **neuropathy, but the evidence does not indicate Plaintiff's neuropathy**

7    **was a severe impairment and thus the ALJ's error is harmless.**

8        Plaintiff argues that the medical evidence shows he suffered from

9    neuropathy and that the ALJ erred in failing to find that diabetes with neuropathy

10   was a severe impairment.  During step two of the sequential evaluation, the ALJ

11   determined that Plaintiff suffered from adjustment disorder, chronic and obesity.

12   (A.R. 20).  The ALJ found that Plaintiff was not severely impaired by diabetes-

13   related symptoms and that there was no neuropathy.  (A.R.  23).

14       Plaintiff points out that an exam on July 22, 2002 found a lack of filament

15   prick sensation in feet and hands and an absence of deep tendon reflexes in the

16   patellar and biceps.  (A.R. 198-9).  Exam records from October 2, 2002 noted

17   decreased sensation bilaterally of the feet.  (A.R. 217).  Also, on March 9, 2005,

18   an exam found that the third and fourth digits of Plaintiff's right had diminished

19   sensation to light touch and slight weakness, and that Plaintiff had compromised

20   deep tendon reflexes in his left upper arm.  (A.R. 407).  Plaintiff contends that

21   these exam records indicate he suffered from peripheral neuropathy and would

22   not be able to perform simple job functions, such as walking and standing.

23       The ALJ erred in finding there was no neuropathy.  Plaintiff testified that

24   he frequently experienced numbness in his hands and feet and that "sometimes

25   [he] can't feel [his] feet." (A.R. 718-19).  The medical evidence discussed above

26   and Plaintiff's testimony support a conclusion that Plaintiff did suffer from

27   neuropathy.

28       However, establishing that the Plaintiff did in fact suffer from neuropathy

9

1   does not necessarily mean that his neuropathy constitutes a severe impairment in

2   step two of the sequential evaluation.  A severe impairment or combination of

3   impairments is one which significantly limits the physical or mental ability to

4   perform basic work activities.  20 C.F.R. §§404.1521, 416.921 (1994).  Basic

5   work activities relate to the abilities and aptitudes necessary to perform most

6   jobs, such as the ability to perform physical functions, the capacity for seeing

7   and hearing, and the ability to use judgment, respond to supervisors, and deal

8   with changes in the work setting.  20 C.F.R. §§404.1521(b), 416.921(b) (1994).

9   An impairment will be considered nonsevere when medical evidence establishes

10   only a "slight abnormality or combination of slight abnormalities which would

11   have not more than a minimal effect on the individual's ability to work, even if

12   age, education or work experience were specifically considered."  Social

13   Security Ruling 85-28; Bowen v. Yuckert, 482 U.S. 137, 154 (1987).  The

14   Plaintiff has the burden for establishing a prima facie case of disability.  Howard

15   v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986).

16        The Plaintiff has not met his burden of establishing that his neuropathy

17   had a more than a minimal effect on his ability to function.  Plaintiff gave

18   complaints of numbness and tingling in his extremities during his testimony

19   before the ALJ, but did not specify how these sensations impaired his ability to

20   function.  (A.R. 677, 717).  He stated that he does "a lot of walking and

21   sometimes I can't feel my feet," but did not state that the numbness and tingling

22   sensations kept him from walking.  Instead, he testified that it took him an hour

23   to walk a mile because "I don't have the strength."  (A.R. 719).  In the hearing

24   before the original ALJ that initially adjudicated Plaintiff's claim, Plaintiff said

25   in regards to the numbness in his legs, "it's a symptom, but it's not a major thing

26   with me right now.  It's just a contributing headache that I have." (A.R. 678).

27        Although the medical record supports a finding of neuropathy, they do not

28   show that Plaintiff was severely limited by symptoms of neuropathy or that

10

1   Plaintiff would not be able to complete basic job functions.  As discussed above,

2   the medical evidence shows that Plaintiff was able to manage daily activities and

3   that he felt better with proper management of his diabetes.  (A.R. 549, 551).

4   Plaintiff was still able to walk, drive, do daily exercises, complete household

5   chores, and go out to shop.  (A.R. 100, 112, 514, 542, 550, 637, 675).

6         The ALJ erred in determining that there was no finding of neuropathy, but

7   the evidence does not indicate Plaintiff's neuropathy resulted in a severe

8   impairment.  The error is harmless and Plaintiff is not entitled to a remand.

9

10   **C. The ALJ properly considered Plaintiff's obesity in determining**

11        **Plaintiff's residual functional capacity.**

12         During step two of the sequential evaluation, the ALJ determined that

13   Plaintiff's obesity was a severe impairment.  (A.R. 20).  Plaintiff argues that the

14   ALJ did not consider Plaintiff's obesity when determining his residual

15   functioning capacity (RFC), as required by Social Security Ruling (SSR) 02-1p.

16   Plaintiff also points out that his Body Mass Index (BMI) falls into the SSR 02-1p

17   category of "extreme" obesity, which the represents the greatest risk for

18   developing obesity-related impairments.  In step four of the sequential

19   evaluation, the ALJ determined that Plaintiff had a residual function capacity to

20   perform light work activity, could walk six hours in a normal workday, was able

21   to lift and carry 20 lbs occasionally and 10lbs frequently.  (A.R. 25)

22         "As obesity is not a separately listed impairment, a claimant will be

23   deemed to meet the requirements if 'there is an impairment that, in combination

24   with obesity, meets the requirements of a listing.' SSR 02-01p (2002)." Burch v.

25   Barnhart, 400 F.3d 676 (9th Cir. 2005).  SSR 02-01p also states, "[An ALJ] will

26   not make assumptions about the severity or functional effects of obesity

27   combined with other impairments.  Obesity in combination with another

28   impairment may or may not increase the severity or functional limitations of the

1   other impairment  [The ALJ] will evaluate each case based on the information in
2   the case record."

3          After determining Plaintiff suffered from obesity as a severe impairment,
4   the ALJ properly found that obesity, in combination with Plaintiff's adjustment
5   disorder, did not equal any "listed impairment."  (A.R. 23).  Next, the ALJ
6   assessed Plaintiff's RFC, taking into account the medical evidence and Plaintiff's
7   testimony and credibility.  (A.R. 24).  The ALJ considered Plaintiff's allegations
8   of both physical and mental impairments, but also weighed the evidence that
9   Plaintiff was able to care for himself, manage financial affairs, regularly shop,
10  took walks, and rejected medication for his depression.  (A.R. 24-5, 100-1, 187,
11  424, 550, 675-6).  Although Plaintiff's weight may increase his risk for obesity
12  related impairment, medical test results indicate Plaintiff had "good
13  cardiovascular conditioning for age/gender," had adequate blood flow during
14  exercise, and his exercise capacity "indicates no/some functional impairment."
15  (A.R. 425-6).   Also, as part of his RFC determination, the ALJ found that
16  Plaintiff's allegations regarding the severity of limitations to be less than fully
17  credible.  (A.R. 25).  The ALJ relied on, instead, the medical evidence on the
18  whole and found that Plaintiff was not limited from performing basic work-
19  related activities by the combination of his obesity and adjustment disorder.

20         The ALJ properly considered obesity during his assessment of Plaintiff's
21  residual functional capacity and determined that Plaintiff was able to perform
22  light work.

23
24
25
26
27  **D. The ALJ properly evaluated Plaintiff's testimony and gave clear and**
28  **convincing reasons for finding Plaintiff's allegations about the**

1          **severity of his symptoms less than fully credible.**

2          Plaintiff argues that the ALJ failed to provide clear and convincing reasons

3  for finding Plaintiff's testimony to be less than fully credible.  The ALJ's

4  assessment of plaintiff's credibility should be given great weight.  Nyman v.

5  Heckler, 779 F.2d 528, 531 (9th Cir. 1985).  "[I]f the ALJ's decision is based on a

6  credibility assessment, there must be an explicit finding as to whether the

7  plaintiff's testimony was believed or disbelieved and the testimony must not be

8  entirely discounted simply because there was a lack of objective findings."

9  Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986).  Furthermore, if the ALJ

10  chooses to disregard plaintiff's testimony, the ALJ must set forth specific cogent

11  reasons for disbelieving it.  Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir.

12  1981).

13          The ALJ provided the following reasons for determining that Plaintiff's

14  allegations about the severity of his symptoms were less than credible:  (1) There

15  was no objective findings to support allegations of limitations; (2) Plaintiff does

16  not need assistive devices when walking, despite claims of disabling pain and

17  fatigue; (3) Neither hospitalization or surgery were recommended; (4) Despite

18  alleging disabling pain, Plaintiff does not exhibit any weight change, difficulty

19  moving, or neurological deficits; (5) Plaintiff's course of treatment reflects a

20  conservative approach; (6) Each of Plaintiffs' examiners found him to be in no

21  apparent distress; (7) The record does not indicate Plaintiff suffers from any

22  debilitating side effects from his medications; (8) Plaintiff has been oppositional

23  to treatment, as he rejected medication; (9) Plaintiff's activities contradict

24  allegations of disabling limitations.  (A.R. 25).

25          Plaintiff argues that these reasons are not specific and cogent, and believes

26  many of them are contradicted by medical evidence.  Particularly, Plaintiff

27  argues that the medical record documents a diabetic condition with related

28  disorders of neuropathy, obesity, and adjustment disorder.  However, as

13

discussed above, the weight of the evidence demonstrates that Plaintiff's diabetes can be managed to improve symptoms, and that Plaintiff is able to perform daily work-related activities.  (A.R. 100-2, 293, 466, 542).

Plaintiff also points out that he experienced weight changes, which could support an allegation of disabling pain.  (A.R. 155, 176, 197, 367, 655).  But there is no evidence that Plaintiff was experiencing weight changes due to disabling pain, rather than an attempt to manage his weight, as prescribed by his physicians.  In fact, his treating doctors encouraged weight loss to help improve his diabetes, but often reported that Plaintiff was having trouble adhering to diet and exercise routines.  (A.R. 186, 195-6, 221, 446, 454, 639).  Plaintiff also argues that he need not be utterly incapacitated to be disabled and that his ability to engage in occasional activities does not indicate an ability to engage in regular work.  However, the ALJ refers to Plaintiff's daily activities in conjunction with the medical evidence to find that Plaintiff was not as severely impaired as alleged.  (A.R. 23).  Additionally, the ALJ considered that Plaintiff did not need any assistive devises, that doctors prescribed a relatively conservative treatment regimen of medication and lifestyle change, and that no hospitalization or surgery was required, in order to find that Plaintiff's allegations were less than credible.  (A.R. 25)

The reasons the ALJ set forth for finding Plaintiff's testimony less than fully credible were specific, cogent and supported by the record.

///

///

///

///

///

## V.  CONCLUSION AND ORDER

For the foregoing reasons, the decision of the Commissioner is affirmed

1  and this Complaint is dismissed.

2  DATED: <u>November 12, 2009</u>

3

4  _____

5  / S /

   STEPHEN J. HILLMAN

6  UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28